UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT VALDEZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:18 CV 2017 RWS ) |
| ANDREW SAUL,<br>Commissioner of Social Security[1] | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Robert Valdez brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Valdez seeks judicial review of the Commissioner's decision denying his application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. For the reasons set forth below, I will reverse the decision of the Commissioner and remand this matter for further proceedings.

---

[1] On January 19, 2019, Andrew Saul became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Saul is automatically substituted for former Acting Commissioner Nancy A. Berryhill as defendant in this action.

I.      **Procedural History**

Valdez alleged disability beginning February 1, 2016.  He asserts that he is unable to work due to obesity, back problems (and resulting pain in other parts of his body), diabetes, and hypertension.

Valdez applied for SSDI and SSI benefits on April 12, 2016.  Valdez's application was initially denied on July 11, 2016.  After a hearing before an Administrative Law Judge (ALJ) on March 19, 2018, the ALJ issued a decision denying benefits on June 13, 2018.  On October 2, 2018, the Appeals Council denied Valdez's request for review.  As a result, the ALJ's decision is the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Valdez contends that the ALJ's decision is not supported by substantial evidence from the record.  Valdez specifically argues that the ALJ did not properly weigh the opinion of his treating physician, that the ALJ did not properly evaluate Valdez's subjective report, and that the ALJ omitted certain limitations from the Residual Functional Capacity (RFC) assessment without sufficient explanation.  Valdez requests that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will reverse the Commissioner's decision and remand the case for further proceedings.

## II. Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Valdez's recitation of facts set forth in his Statement of Material Facts [ECF No. 10-1] insofar as the facts are admitted by the Commissioner. I also adopt the additional facts set forth in the Commissioner's Response to Plaintiff's Statement of Material Facts with Additional Material Facts [ECF No. 15-1], as they are unrefuted by plaintiff. Specific facts will be discussed as needed to address the parties' arguments.

## III. Legal Standards

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(a). To determine whether a claimant is disabled, the Commissioner evaluates his claim through five sequential steps. 20. C.F.R. § 404.1520; Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (describing the five-step process).

Steps one through three require that the claimant prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R.

3

§ 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Step four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). Id. at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines that the claimant cannot return to his PRW, the burden shifts to the Commissioner at step five to show that the claimant retains the residual functioning capacity (RFC) to perform other jobs that exist in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ is required to evaluate the credibility of a claimant's testimony, including the claimant's subjective complaints of pain, prior to determining his RFC. Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In so doing, the ALJ is not permitted to ignore the claimant's testimony even if it is inconsistent with objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). After considering the claimant's testimony, the ALJ may disbelieve it if the testimony is inconsistent with the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). To properly evaluate the claimant's subjective complaints, the ALJ must consider the factors enumerated in Polaski v. Heckler:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1)

4

> the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ must consider the Polaski factors, he need not enumerate them specifically. Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010). When the ALJ explicitly disbelieves the claimant's testimony and gives good reasons for his disbelief, a reviewing court will typically defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility to develop the record fully and fairly in the course of the non-adversarial administrative hearing. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because I would have decided the

5

case differently. See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). I must "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

## IV. ALJ's Decision

In his written decision, the ALJ found that Valdez has not engaged in substantial gainful activity since the alleged disability onset date of February 1, 2016. The ALJ found Valdez's degenerative disc disease and diabetes mellitus with neuropathy to be severe impairments. The ALJ determined that Valdez's severe impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ next found that Valdez

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he is unable to operate any foot control operations. He is unable to climb ladders, ropes or scaffolds, kneel, crouch and crawl, but he can occasionally climb ramps or stairs and stoop. He is limited to occupations that can be performed while using a hand held assistive device required for prolonged ambulation, at all times when standing, and when the opposing arm can be used to lift and carry up to the exertional limits. He is to avoid exposure to extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery.

(Tr. 18).

The ALJ found that Valdez was unable to perform any PRW (Tr. 21). Considering Valdez's RFC, age, education, and work experience, the ALJ relied upon vocational expert testimony to support a conclusion that Valdez could

6

perform work as it exists in significant numbers in the national economy, and specifically in occupations such as a ticket taker, optical goods assembler, or circuit board touch-up worker (Tr. 22). As a result, the ALJ found Valdez not to be disabled at any time from February 1, 2016 through the date of the decision (Tr. 22).

## V.     Discussion

In the decision, the ALJ concludes that the evidence of record does not support the opinion testimony from Dr. Jason Romancik and the subjective testimony from Valdez. In reaching these conclusions, the ALJ does not provide good reasons or further detail about what in the record forms their bases. I will remand this case so the ALJ can further explain and support his reasons for providing limited weight to the opinion of treating physician Dr. Jason Romancik and for concluding that Valdez's statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. On remand, the ALJ should also explain why he did not include any limitations in Valdez's RFC regarding Valdez's ability to twist, need for unscheduled breaks, and need to be absent from work more than two times per month.

### a. Dr. Jason Romancik's Opinion

Dr. Jason Romancik is Valdez's treating physician. (Tr. 21) ("Jason Romancik, M.D., the claimant's treating physician . . ."). Dr. Romancik submitted medical source statements evaluating Valdez's physical and mental health (Tr. 332-39). The ALJ accorded limited weight to the Medical Source Statement Physical (MSSP) and great weight to the Medical Source Statement Mental (MSSM). The ALJ did not sufficiently explain why he accorded only limited weight to Dr. Romancik's MSSP.

In analyzing medical evidence, "[o]rdinarily, a treating physician's opinion should be given substantial weight." Rhodes v. Apfel, 40 F.Supp.2d 1108, 1119 (E.D. Mo. 1999) (quoting Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995)). A treating physician's opinion will typically be given controlling weight when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." Prosch v. Apfel, 201 F.3d 1010, 1012–1013 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(c)(2)). This is so because a treating physician is

> likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). Treating physicians' opinions, however, do "not

8

automatically control, since the record must be evaluated as a whole." Id. at 1013 (internal citation removed). The opinions may be discounted or disregarded where other "medical assessments 'are supported by better or more thorough medical evidence.'" Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)).

Whatever weight the ALJ accords the treating physician's report, the ALJ is required to give good reasons for the particular weight given. See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir.2001). If, as here, the ALJ determines the opinion of a treating physician is not well supported or is inconsistent with other evidence, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by the relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered, and (6) other factors that may contradict or support the opinion. See Rhodes, 40 F.Supp.2d at 1119; 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's discussion regarding Dr. Romancik's MSSP fails to demonstrate what of Dr. Romancik's opinion is unsupported by substantial evidence in the record such that the entire opinion should only receive limited weight. It also does not demonstrate the ALJ considered the factors required by 20 C.F.R.

9

§ 404.1527(c)(2)-(6).  The reason the ALJ provided for assigning limited weight to Dr. Romancik's MSSP is that the MSSP is too restrictive in evaluating the restrictions Valdez experiences with his hands and ability to stoop.  The ALJ did not further support this determination with specific references to the record, instead generally referring to Valdez's hand use restrictions as being unsupported "given the treatment records and consultative examination," and stating that "the treatment records fail to show an inability to stoop given [Valdez's] x-rays and MRI scans."  The ALJ also separately recounted some of the objective medical evidence regarding Valdez's ability to use his hands and to stoop but did not explain how that evidence undermined Dr. Romancik's opinion.

      Moreover, the ALJ's discounting of Dr. Romancik's opinion on the basis that it was overly restrictive in its recommendation on Valdez's ability to stoop does not appear to be supported by substantial evidence from the record.  The ALJ found "the treatment records fail to show an inability to stoop given [Valdez's] x-rays and MRI scans."  (Tr. 21)  The ALJ does not provide a citation for, or further explain, this determination.  I am unable to determine what from Valdez's MRI and x-ray records support the ALJ's finding that Dr. Romancik's opinion is without support.

      In his response brief, the Commissioner also cites the x-ray and MRI records to which the ALJ's decision refers.  These records include diagnoses and

10

observations such as "the lumbar spine is hypomobile" (Tr. 446) and Valdez has "severe bilateral neuroforaminal stenosis" (Tr. 448). The records consistently indicate severe L5-S1 disc degenerative change and "extreme back pain during the period at issue." (Tr. 21) The ALJ does not explain how the extensive objective evidence of Valdez's lower back problems fails to support Dr. Romancik's opinion on Valdez's ability to stoop.

Even if the ALJ properly concluded that Dr. Romancik's MSSP should not be accorded controlling weight, he did not appear to consider the factors required by 20 C.F.R. § 404.1527(c)(2)-(6) in determining the proper weight to accord it. Although the ALJ wrote that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527," the opinion does not appear to contain any actual consideration of the factors cited in the regulation. This falls short of the standard that an ALJ will "always give good reasons ... for the weight [accorded a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2); Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005).

On remand, the ALJ should further consider the medical evidence of record and provide a clearer explanation of his decision to accord limited weight to treating physician Dr. Romancik's MSSP.

### b. Valdez's Testimony

The ALJ found that Valdez's impairments could reasonably be expected to cause some of Valdez's alleged symptoms (Tr. 20). However, the ALJ also found that Valdez's statements "concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.) The ALJ does not detail his reasons for discounting Valdez's statements, explain which statements were inconsistent with the record, or describe what from the evidence was inconsistent with them.

When discounting Valdez's testimony regarding the severity of his symptoms, the ALJ should have detailed "the reasons for discrediting the testimony and set forth the inconsistencies found." Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003). The ALJ's determination of how much to credit Valdez's testimony should also "be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

On review, I was unable to assess how the ALJ evaluated the presence and severity of Valdez's symptoms. After finding that "the medical evidence and other evidence of record" was inconsistent with Valdez's statements about the severity of his symptoms, the ALJ recited some of Valdez's relevant medical history. This

recitation, however, did not indicate how, and to what extent, it related back to Valdez's claims.  The evidence of record, as summarized by the ALJ, appears to support Valdez's testimony concerning the severity of his symptoms.  To the extent the ALJ found some of the evidence inconsistent with Valdez's testimony, he did not explain on what evidence he relied in particular, or how the record as a whole fails to support Valdez's testimony.

On remand, the ALJ should clearly explain which of Valdez's complaints were inconsistent with the evidence and to what extent the complaints and evidence were inconsistent.  The ALJ should more overtly incorporate the factors set forth in 20 C.F.R. § 404.1529 and should clearly explain how those factors result in the weight he accorded Valdez's testimony.

### c.  Residual Functional Capacity Limitations

The RFC does not reference Valdez's ability to twist, take unscheduled breaks, and be absent from work.  Valdez's testimony and Dr. Romancik's MSSP both state that Valdez experiences limitations in these areas.  The RFC assessment does not explain why these opined limitations are absent from the RFC.  The limitations do not appear to be related to the portions of Dr. Romancik's MSSP that the ALJ found to be inconsistent with the medical evidence in the record.

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8P (S.S.A.

July 2, 1996). If the ALJ decided to omit the limitations because he assigned limited weight to Dr. Romancik's MSSP or Valdez's testimony, because he did not find support for the limitations in the record, or because the limitations were inconsistent with the record, the ALJ should have more clearly explained his reasoning in the RFC assessment. The decision to exclude these restrictions had a bearing on the final determination of whether there are jobs in the national economy in which Valdez could work. If the RFC included a limitation stating Valdez would need to be absent from work more than two days per month, there would be no jobs available in the national economy in which Valdez could be employed. (Tr. 46-47)

On remand, the ALJ should clearly explain his reasons for deciding to omit from the RFC any limitations on Valdez's ability to twist, take unscheduled breaks, and be absent from work.

## VI.    Conclusion

When reviewing an adverse decision by the Commissioner, my task is to determine whether the decision is supported by substantial evidence on the record as a whole. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." Id. Where substantial evidence supports the Commissioner's decision, this Court may not reverse the

decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Id.; see also Igo v. Colvin, 839 F.3d 724, 728 (8th Cir. 2016); Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, I find that the ALJ did not sufficiently explain why he accorded limited weight to Dr. Romancik's MSSP, did not provide good reasons for discounting Valdez's testimony about the severity of his pain, and did not explain why he fashioned an RFC that excluded several limitations, including restrictions on twisting, unscheduled breaks, and the number of days per month Valdez would be absent from work.  These issues are significant and directly impact the ultimate determination of whether Valdez is able to work.  As a result, I will remand this case for further proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is **REVERSED,** and the case is **REMANDED** for further proceedings in accordance with this memorandum and order.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 15th day of April, 2020.